This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 163
Stacy S. Killon,
          Respondent,
       v.
Robert A. Parrotta,
          Appellant.




          Gregory V. Canale, for appellant.
          Joseph R. Brennan, for respondent.




ABDUS-SALAAM, J.:

          The issue presented is whether the Appellate Division applied the correct test in setting aside the jury verdict and concluding as a matter of law that defendant was the initial aggressor in the physical altercation between the parties, rendering a justification defense unavailable to defendant during retrial of the case. We hold that the Appellate Division did not apply the "utterly irrational" test required to make that

- 1 -

determination as a matter of law.  Applying that test to the trial evidence and in consideration of the jury instruction given, we hold that it was not utterly irrational for the jury to find that defendant was not the initial aggressor and that he acted in self-defense.  We therefore reverse and remit to Supreme Court for retrial.

I.

This personal injury action resulted from a physical altercation between plaintiff, Stacey Killon and defendant, Robert Parrotta.  During trial the evidence revealed that plaintiff, a longtime friend of defendant's then-wife, made a drunken threatening phone call to defendant concerning defendant's treatment of his wife.  In response, defendant drove approximately 20 miles in the middle of the night to plaintiff's residence in Olmstedville.  Defendant's stated intention was to end their dispute face-to-face, or to engage in a physical altercation.  During defendant's drive, he placed two phone calls to his then-wife.  Although defendant testified during trial that she did not answer either of his calls, his then-wife testified that she had answered and defendant told her he was going to Olmstedville to beat up plaintiff and to tell plaintiff that he was coming for that purpose.

When defendant arrived at plaintiff's home, he shined his truck lights onto plaintiff's property.  Defendant and

plaintiff, however, disagree on what occurred thereafter. Defendant claims that after plaintiff saw him, plaintiff exited his home with a maul hammer handle in hand. Defendant testified that he only wanted to talk to plaintiff, but after seeing plaintiff with the maul handle, he retrieved a bat out of his truck to defend himself. According to defendant, plaintiff then encouraged his dog to attack defendant. Defendant testified that plaintiff, still standing on his porch, swung the maul handle at him, grazing the back of defendant's head. Defendant, claiming he could not retreat because he had bad knees, swung his bat at plaintiff. Although defendant does not recall the bat making contact with plaintiff, plaintiff suffered extensive damage to his jaw as a result. Defendant fled the scene following the incident. In plaintiff's version of events, when defendant arrived at his home, he repeatedly told defendant to leave. He stated that as he stepped off his front porch he threw the maul handle to the ground, not at defendant. Defendant then swung his bat at plaintiff, causing plaintiff's injuries. Additionally, a witness for plaintiff who was present during the incident testified that when defendant arrived, he came out of his truck with the bat.

Supreme Court provided the following jury instruction:

"defendant claims he was acting in self-defense and therefore is not liable for damages to the plaintiff. The defendant has the burden of establishing self-defense by a fair preponderance of the credible evidence, as I have defined that term for you.

In order to establish self-defense, the defendant must establish that he reasonably believed the plaintiff was attacking or about to attack him and that the force that the defendant used to prevent injury to himself was reasonable under the circumstances. . . . In order for the defendant to be justified in using physical force, you must find the following factors:

First. Whether the defendant was the initial aggressor. Initial aggressor means the person who first attacks or threatens to attack . . . [t]he actual striking of the first blow or inflicting the first wound is not in itself determinative of the question of who was the initial aggressor. . . . A person who reasonably believes that another person is about to use physical force upon him need not wait until he's struck or wounded. He may in such circumstances use physical force defensively, so long as it was reasonable for him to believe that the other person was using or about to use physical force upon him. He is then not considered to be the initial aggressor, even though he strikes the first blow or inflicts the first wound.

Verbal quarrels, the use of abusive language, the calling of names or verbal threats do not justify the use of any physical force. You may not consider any of these in determining who was the initial aggressor.

If you are satisfied that the defendant was the initial aggressor, then you must find he was not acting in self-defense. On the other hand, if the defendant was not the initial aggressor, you must continue . . . to the remaining factors"

The jury reached a unanimous verdict that defendant battered plaintiff by striking him with a bat, but also found that defendant acted in self-defense. Plaintiff moved for an order pursuant to CPLR 4404 (a) to set aside the verdict as a

matter of law and direct judgment in his favor or, alternatively, set aside the verdict as contrary to the weight of the credible evidence and grant him a new trial. Supreme Court denied plaintiff's motion, holding that based on all the facts presented, the jury could have concluded that defendant's actions were in self-defense, and judgment was entered in defendant's favor.

On appeal, the Appellate Division reversed the Supreme Court order and judgment and ordered a new trial (98 AD3d 828 [3d Dept 2012][hereinafter the "2012 Appellate Division order"]). The court concluded that "no fair interpretation of the evidence" supported "the verdict finding that defendant acted in self-defense" inasmuch as it was predicated upon "a conclusion that defendant was not the initial aggressor in the encounter" (id. at 829). The court held that

> "[d]espite plaintiff's prior threatening phone calls and the evidence that plaintiff was the first of the two to swing his club, there is no dispute that defendant drove to plaintiff's home and then advanced on plaintiff's front porch with a bat in his hand while demanding a fist fight. Given these circumstances, the jury's conclusion that defendant was not the first to threaten the immediate use of physical force is unreachable on any fair interpretation of the evidence"

(id. at 830). Two Justices dissented and voted to affirm, contending that "there [wa]s a fair interpretation of the evidence that support[ed] the conclusion that defendant was not the initial aggressor and, therefore, the jury's verdict should

not be disturbed" (id. at 830). The dissent noted that "the fact that defendant went to plaintiff's home, approached the porch holding a bat and invited plaintiff to fist fight with him d[id] not require a finding that defendant was the initial aggressor" (id. at 831).

During the retrial ordered by the Appellate Division majority, Supreme Court indicated that it was constrained by the holding in the 2012 Appellate Division order that defendant was the initial aggressor, as a matter of law, and denied defendant's request to charge the jury on self-defense. The jury found that defendant had committed a battery upon plaintiff and that plaintiff did not provoke the battery. The jury also awarded plaintiff $200,000 in damages for medical costs, $0 for past pain and suffering, and $25,000 for future pain and suffering. As relevant here, on appeal from the retrial, the Appellate Division "reject[ed] defendant's claim that Supreme Court erred because it did not issue a justification charge to the jury" because that "defense is not available to the initial aggressor, and defendant concedes that, pursuant to this Court's prior decision, he was the 'initial aggressor'" (125 AD3d 1220 [3d Dept 2015]).[1]

Defendant's appeal to this Court from the 2015 order

---

[1] The Appellate Division also held that "the jury's failure to award damages for plaintiff's past pain and suffering deviated materially from reasonable compensation," requiring a retrial unless the parties could stipulate to an increase in the awards for past and future pain and suffering (125 AD3d at 1223). Thereafter, the parties did so stipulate.

brings up for review the prior non-final 2012 order, which concluded as a matter of law that defendant was the initial aggressor to whom the defense of justification is not available (see CPLR 5601 [a]; 98 AD3d at 830; 125 AD3d at 1221).

## II.

The question before us is whether the Appellate Division's legal conclusion in its 2012 order was reached under the proper test. When the Appellate Division reviews a jury determination, it may either examine the facts to determine whether the weight of the evidence comports with the verdict, or the court may determine that the evidence presented was insufficient as a matter of law, rendering the verdict utterly irrational (see Cohen v Hallmark Cards, 45 NY2d 493, 499 [1978]). Defendant argues that the Appellate Division erred by setting aside the jury verdict in his favor and improperly determining as a matter of law that a justification defense was unavailable to him, without finding the verdict to be utterly irrational. We agree.

The Appellate Division may not disregard a jury verdict as against the weight of the evidence unless "the evidence so preponderate[d] in favor of the [moving party] that it could not have been reached on any fair interpretation of the evidence" (Lolik v Big Supermarkets, 86 NY2d 744, 746 [1995]). Where the Appellate Division determines that a verdict is against the

weight of the evidence, the remedy is to remit for a new trial.
By contrast, where the Appellate Division intends to hold that a
jury verdict is insufficient as a matter of law, it must first
determine that the verdict is "utterly irrational" (Campbell v
City of Elmira, 84 NY2d 505, 510 [1998]).  To conclude that a
verdict is utterly irrational, requiring vacatur of the verdict,
the court must determine that "there is simply no valid line of
reasoning and permissible inference which could possibly lead [a]
rational [person] to the conclusion reached by the jury on the
basis of the evidence presented at trial" (id.).  "When it can be
said that 'it would not be utterly irrational for a jury to reach
the result it . . . determined . . . the court may not conclude
that the verdict is as a matter of law not supported by the
evidence'" (id., quoting Cohen, 45 NY2d at 499).

In its 2012 order, although the Appellate Division
examined the facts and determined that "the jury's conclusion
that defendant was not the first to threaten the immediate use of
physical force [wa]s unreachable on any fair interpretation of
the evidence" (98 AD3d 830) -- ostensibly a weight of the
evidence review -- the effect of that order was to hold as a
matter of law that defendant was the initial aggressor to whom
the defense of justification was not available -- a determination
that could only be reached by concluding that the verdict was
"utterly irrational."  Yet, the Appellate Division did not use
the utterly irrational test.  The Appellate Division's error in

not applying the proper test resulted in defendant being improperly precluded from raising a justification defense on the retrial.  Defendant should have been afforded a new trial on all the issues in the case, including consideration of his justification defense by the jury.  Despite this error, reversal is only required if we find that the jury verdict was not utterly irrational.

## III.

Because determining whether a jury verdict was utterly irrational involves a pure question of law, this Court may look at the trial evidence and make that determination (see e.g. Cohen, 45 NY2d 493).  We must consider the jury charge as to initial aggressor and self-defense that was given during the first trial because the instruction, submitted without objection, is the law of the case (see Passantino v Consolidated Edison Co. of New York, Inc., 54 NY2d 840, 842 [1981]).  Based on that instruction, set forth above, we hold that the jury's determination that defendant acted in self-defense was not utterly irrational.

The evidence presented during the first trial, as summarized in this opinion, revealed conflicting versions of events.  Although the entire encounter occurred because defendant drove to the plaintiff's home, it was not utterly irrational for the jury, under the charge delivered to it, to determine that

defendant was not the initial aggressor based on the conflicting versions.  The jury could have believed that plaintiff brought out a weapon first, told his dog to attack defendant, and swung his weapon first.  Because the jury verdict was not utterly irrational, we reverse and remit to Supreme Court for a new trial.[2]

Accordingly, the order appealed from and the August 30, 2012 Appellate Division order insofar as brought up for review should be reversed, with costs, and the matter remitted to Supreme Court for a new trial in accordance with the opinion herein.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order appealed from and the August 30, 2012 Appellate Division order insofar as brought up for review reversed, with costs, and matter remitted to Supreme Court, Warren County, for a new trial in accordance with the opinion herein.  Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott, Rivera, Fahey and Garcia concur.  Judge Stein took no part.

Decided October 27, 2016

---

[2]  While we would normally remit to the Appellate Division to consider whether the jury's verdict on self-defense was against the weight of the evidence, because under these unusual circumstances where the Appellate Division already performed that analysis and decided the case should be retried, remittal directly to Supreme Court for a new trial is most appropriate.